IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| RAEVEN DEBRECE D'YOUNG, ET AL., § § Plaintiffs, § § v. § § COMMISSIONER, SSA, § § Defendant. § § § | CIVIL ACTION NO. 4:19-CV-00815-RWS-CAN |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff Raeven Debrece D'Young ("Young") and her mother Simona Shirrelle Greene ("Greene") filed an appeal for judicial review, under 42 U.S.C. § 405(g), of the final decision of the Commissioner of Social Security ("Commissioner"), denying Young's claim for benefits. After reviewing the Briefs submitted by the Parties, as well as the administrative record, the Court recommends that any claims asserted by Greene, by herself and/or on behalf of Young, against the Commissioner be **DISMISSED WITHOUT PREJUDICE** due to lack of standing; the Court further recommends, to the extent Young asserts any claims on her own behalf, that the Commissioner's decision be **AFFIRMED**.

**RELEVANT PROCEDURAL HISTORY**

This case has a lengthy procedural history dating back almost ten years. Young was born on November 27, 1993, and received child's benefits based upon cerebral palsy, beginning in 1994 until the month she turned eighteen [TR 36]. Young attained the age of eighteen on November 27, 2011 [TR 36]. In November 2011, Young filed an application for adult benefits (SSI) [TR 268-77]. Starting in September 2012, the "Agency converted Plaintiff's claim to an age 18

redetermination" [Dkt. 16 at 2]. On January 8, 2013, Young was notified that she was found no longer disabled as of December 1, 2012 [TR 119-22].

*February 2014 ALJ Decision*

Young requested an administrative hearing before an ALJ on February 1, 2013 [TR 123]. A Hearing was held on November 6, 2013 [TR 997-1039]. Young's mother, Greene, appeared with her at Hearing [TR. 997]. On February 18, 2014, the ALJ issued an unfavorable decision [TR 31-47]. On March 11, 2014, Young asked the Appeals Council to review the ALJ's decision dated February 18, 2014 [TR 142-43]. The Appeals Council remanded the case to the ALJ for further fact-finding on the "nature and severity of [Young's] mental impairments" [TR 48-54].

*August 2015 ALJ Decision*

A second hearing was held on June 28, 2015 [TR 967-96], and after taking testimony from additional medical experts, a second unfavorable decision was issued on August 17, 2015, finding that Young's mental impairments, based upon the additional fact-finding, were not sufficient to meet the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 [TR 62-79]. Young appealed, and the Appeals Council again remanded, this time because the second hearing recording could not be located, rendering the record incomplete [TR 55-61].

*June 2018 ALJ Decision*

A third hearing was held on March 16, 2018 [TR 938-66] and the ALJ issued a third unfavorable decision on June 5, 2018, substantially restating the previous decision dated August 17, 2015 [TR 80-104]. The ALJ made the following sequential evaluation [TR 80-99].[1]

---

[1] For an age 18 disability determination, where the claimant was receiving Title XVI benefits as a child, the agency evaluates the claimant's disability status using the five-step sequential evaluation for adults who file new applications, except that step one (regarding the claimant's performance of substantial gainful activity) is not considered. 20 C.F.R. §§ 416.920, 416.987(a)-(b). Starting at step two, the claimant is not disabled if his alleged impairment is not severe, without consideration of his residual functional capacity, age, education, or work experience. 20 C.F.R. § 404.1520(c).

At step two, the ALJ found that since December 1, 2012, Young has had the following severe impairments: a history of cerebral palsy with blindness in the right eye, borderline intellectual functioning, dysthymic disorder, and pervasive development disorder [TR 85]. Further, the ALJ found that Young had the following nonsevere impairments: hearing loss, severe residual effects of cerebral palsy, ADHD, delusional disorder, and anxiety disorder [TR 89]. At step three, the ALJ found Young did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526) [TR 89]. At step four, the ALJ found Young had the following residual functional capacity since December 1, 2012,

> [T]he claimant has had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: She cannot perform tasks requiring a full visual field or depth perception and cannot work in proximity to hazards such as unprotected heights, moving machinery parts, and open flames. Also, she cannot operate a vehicle or operate heavy equipment. From a mental standpoint, she can understand, remember, and carry out only simple tasks involving only simple work-related decisions with few, if any, workplace changes.

[TR 93]. Continuing the step four analysis, the ALJ determined that Young did not have any past relevant work [TR 97]. At step five, based on Young's age, education, work experience, RFC, and the testimony of the VE, the ALJ found that there were jobs that existed in significant numbers in the national economy that Young can perform, such as collator, DOT code 208.685-010, SVP level 2; sorter, DOT code 509.686-018, SVP level 2; and bus attendant, DOT code 352.577-010, SVP 2 [TR 98]. Based on this determination, the ALJ concluded Young's disability ended on

---

Next, if the alleged impairment is severe, the claimant is considered disabled if his impairment corresponds to a listed impairment in 20 C.F.R., Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). A claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if he is capable of performing his past work. 20 C.F.R. § 404.1520(e). Finally, a claimant who cannot return to his past work is not disabled if he has the residual functional capacity to engage in work available in the national economy. 20 C.F.R. § 404.1520(f). Under the first four steps of the analysis, the burden lies with the claimant to prove disability and at the last step the burden shifts to the Commissioner. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). If at any step the Commissioner finds that the claimant is or is not disabled, the inquiry terminates. *Id.*

December 1, 2012 based on at step five of the sequential analysis under § 216(i) and § 223(d) of the Act, and therefore she was not entitled to receive SSI as of December 2012 [TR 857].

Young appealed this decision on July 19, 2018 [TR 267].[2]  The Appeals Council denied Young's request for review on September 19, 2019, making the June 2018 ALJ Decision the final decision of the Commissioner [TR 16-18].  The instant action, filed on November 8, 2019, followed [Dkt. 1].  The suit names both Young and Greene as Plaintiffs and was initiated by Greene as Young's "Legal Guardian" [Dkt. 1 at 6].  The Court granted Young *in forma pauperis* status; however, in doing so, expressly admonished Greene that she was unable to represent the interests of Young before this Court and must retain counsel to prosecute Young's claims [Dkt. 4].  The Commissioner filed an answer on January 31, 2020 [Dkt. 7], and the Administrative Record was received on the same date [Dkt. 8].  The Court directed the parties to file briefs [Dkt. 10].  On May 22, 2020, the Court received a one-page letter from Greene, stating she was unable to seek legal representation for Young and that she currently represented her daughter, Young.  Greene advised the letter was intended as Young's brief [Dkt. 15].  The Government filed a response on July 20, 2020, addressing the merits of the claims [Dkt. 16].

## ANALYSIS

### *Greene Lacks Standing to Represent Young or Pursue Claims on Her Behalf*

As an initial matter, the Court addresses that Young's legal guardian, Greene, lacks standing to represent or pursue this action on Young's behalf.  Young, by and through her mother Greene, proceeding *pro se*, filed the instant action [Dkt. 1].  Greene attended the underlying hearings and served as both a representative and a witness for Young before the ALJ [TR 940-44

---

[2] The Appeals Council initially granted Young's request for review on February 6, 2019 [TR 105-07].  The Appeals Council found that the ALJ had improperly given weight to medical testimony outside of the record, testimony that was contained in the missing 2015 hearing record [TR 105-07].  The missing hearing recording was subsequently located, and the Appeals Council entered an Order vacating its February 6, 2019, order of remand [TR 20-23].

(discussion between ALJ and Greene regarding Young's representation)]. However, as this Court has already once advised Greene, she may not, as a non-attorney, represent her child before this Court. Indeed, on November 13, 2019, this Court expressly advised Greene:

> While Plaintiff's Motion is signed by and contains the financial information of Plaintiff Raeven D. Young, it purports to have been filed by her legal guardian Simona Greene [Dkt. 3]. The right to proceed pro se in civil actions is guaranteed by 28 U.S.C. § 1654: "In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein." Notwithstanding, 28 U.S.C. § 1654 authorizes a litigant to proceed in federal court as his or her own counsel—individuals who do not hold a law license may not represent other parties even on a next-friend basis. And although Section 406(a) of Title 42 permits non-attorneys to represent claimants, the provision applies only to administrative proceedings before the Commissioner. 42 U.S.C. § 406(a)(1). Section 406, which is entitled "Representation of claimants before Commissioner of Social Security," states in relevant part:
>
>> The Commissioner of Social Security may prescribe rules and regulations governing the recognition of agents or other persons, other than attorneys as hereinafter provided, representing claimants before the Commissioner of Social Security
>
> The plain language of the statute indicates that Congress only authorized the Commissioner to recognize non-attorneys representing claimants in proceedings held before the Commissioner. There is no parallel provision in the Act authorizing the Commissioner to permit non-attorney representation of claimants in proceedings before the courts.
>
> Because Simona Greene has not proven herself to be licensed attorney, and because this proceeding is not an administrative proceeding conducted before the Commissioner, Greene has not demonstrated that she may represent the interests of Plaintiff Young. To the extent that Plaintiff Young is incapable of representing her own interest, Simona Greene must demonstrate her entitlement under the law to represent Plaintiff Young or must retain counsel to prosecute Plaintiff Young's claims in the instant case before making any further filings with the Court.

[Dkt. 4 at 2-3 (internal citations omitted)]. Numerous district courts in this and sister circuits have recognized, just as this Court admonished, that a legal guardian cannot represent an adult child in a social security appeal. *Wesley v. Astrue*, No. 4:11-CV-806-A, 2012 WL 75758, at *3 (N.D. Tex. Jan. 10, 2012) (holding that a grandmother lacked standing to bring an appeal of SSI benefits of

her 26-year old granddaughter); *Farina v. Comm'r*, 670 F. App'x 756, 757-58 (3d Cir. 2016) (holding that a father could not represent his twenty-two-year-old daughter in SSI appeal); *Bacon v. Social Security Administration*, No. 1:16-CV-2242-MHC-JSA, 2016 WL 10988684, at *2 (N.D. Ga. Aug. 26, 2016), *report and recommendation adopted*, 2016 WL 10988737 (N.D. Ga. Sept. 15, 2016) (holding that adult "representative" of twenty-year-old adult could not represent claimant on SSI appeal); *Sabbia v. Comm'r*, 669 F. Supp. 2d 914, 917 (N.D. Ill. Nov. 16, 2009) (holding that *pro se* parent could not represent adult children in SSI appeals). The Fifth Circuit has similarly recognized, albeit implicitly, that legal guardians may not represent adult children. *See e.g., Harris v. Apfel*, 209 F.3d 413, 416-17 (5th Cir. 2000); *Sprague v. Dep't of Family & Protective Servs.*, 547 F. App'x 507, 508 (5th Cir. 2013) (citing *Harris*, 209 F.3d at 417). Young is not a minor. Young's appeal stems from her reaching the age of adulthood and redetermination of her SSI benefits associated with such change in status [TR 67]; at the time this case was filed, Young was twenty-five years in age [Dkt. 1]. Thus, Greene has no capacity to pursue this action on Young's behalf. The Court has already once admonished Greene she may not represent Young in this cause. To the extent Greene has asserted or brings any claims on Young's behalf, such claims must be dismissed for lack of standing.

### *Young's Claims*

While Greene lacks standing to assert or pursue any claims on Young's behalf, Young can represent herself *pro se*. Thus, to the extent any claims could be argued to have been asserted by Young herself, the Court addresses the claims brought in the Complaint. "Construing Plaintiff's brief liberally, the following is the Commissioner's best estimation of the issues Plaintiff intended to address:

(1) Did the ALJ properly determine Plaintiff's alleged hearing and cerebral palsy related impairments were nonsevere?

(2) Do substantial evidence and relevant legal standards support the ALJ's RFC assessment?" [Dkt. 16 at 2].[3]

*Alleged Step Two Error*

Young argues that the ALJ improperly found that her hearing and cerebral palsy related impairments were nonsevere, pointing to both her school and medical records in support [Dkt. 15]. The Commissioner argues that "[a]fter considering all of the relevant evidence" the ALJ properly determined at step two that Young had a history of cerebral palsy, but that the evidence did not support any associated musculoskeletal, neurological, or auditory deficits that would cause more than a minimal effect on Plaintiff's ability to engage in basic work activities" [Dkt. 16 at 6].

"[A] 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S. § 423(d)(3). At step two, the ALJ must consider the severity of an impairment or combination of impairments to determine if the claimant is disabled. An impairment is not severe "if you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(a)(4)(ii). The Fifth Circuit interpreted this severity standard in *Stone v.*

---

[3] In an appeal under § 405(g), this Court must review the Commissioner's decision to determine whether there is substantial evidence in the record to support the Commissioner's factual findings and whether the Commissioner applied the proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert denied, 514 U.S. 1120 (1995); 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). It is more than a mere scintilla and less than a preponderance. *Boyd v. Apfel*, 239 F3d 698, 704 (5th Cir. 2001). This Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner, but it will carefully scrutinize the record to determine if evidence is present. *Harris v. Apfel*, 209 F.3d 313, 417 (5th Cir. 2000); Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1995). Additionally, any conflicts in the evidence, including the medical evidence, are resolved by the ALJ, not the reviewing court. *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985).

REPORT AND RECOMMENDATION – Page 7

*Heckler*, holding "an impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." 752 F.2d 1099, 1101 (5th Cir. 1985) (quoting *Estran v. Heckler*, 745 F.2d 340 (5th Cir. 1984)) (cleaned up). "[T]o establish that a severe impairment is present, a claimant must meet her burden of demonstrating (1) a functional impairment, (2) attributable to a medically determinable impairment, that (3) limits her ability to perform basic work activities." *Steele v. Comm'r*, No. 4:20-cv-00867, 2022 WL 4244834, at *4 (E.D. Tex. Aug. 29, 2022), (citing *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992), *report and recommendation adopted*, No. 4:20-cv-867, 2022 WL 4241740 (E.D. Tex. Sept. 14, 2022); *see also Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) ("[A]n impairment is severe if it is anything more than a 'slight abnormality' that 'would not be expected to interfere' with a claimant's ability to work.") (internal citations omitted). There is no burden on the Commissioner to prove the absence of a claimant's alleged impairments. *See Domingue v. Barnhart*, 388 F.3d 462, 463 (5th Cir. 2004) (burden of establishing the presence of a medically determinable impairment with acceptable medical evidence is on the claimant); *see also Crowley v. Apfel*, 197 F.3d 194, 198 (5th Cir. 1999) (Plaintiff has the burden to present medical evidence that supports her claim of a severe impairment). The Fifth Circuit holds that failure to make a severity finding at step two generally is not reversible error when an ALJ continues with the sequential evaluation process.[4] *Dise v. Colvin*, 630 F. App'x 322, 324 (5th Cir. 2015) ("[B]ecause the ALJ proceeded to step five of the analysis, any failure to find additional impairment severe at

---

[4] The rationale for this principle is that the severity finding at step two is a threshold assessment that allows the ALJ to dismiss a claim without further evaluation. *Factory v. Comm'r*, No. 4:15-CV-00731-CAN, 2017 WL 1177992, at *5 (E.D. Tex. Mar. 29, 2017) (citing *Delgado v. Colvin*, No. 5:13-cv-137, 2014 WL 3361752, at *3-4 (N.D. Tex. July 9, 2014)). Thus, when an ALJ proceeds past step two, the case does not turn on the question of severity, but instead, whether the claimant's impairments prevent him or her from performing work. *Id.*

step two does not justify remand.").[5]  Courts routinely apply a harmless error analysis "if the ALJ shows that the impairments deemed non-severe were still considered along with any severe impairments in determining whether the claimant meets a listing and, if not, in determining the claimant's residual functional capacity." *Owen v. Comm'r*, No. 2:19-CV-073-RSP, 2020 WL 1663533, at *2 (E.D. Tex. Apr. 3, 2020).

The ALJ determined that Young had a history of cerebral palsy with right eye blindness; however, he further concluded that Young had "no other severe physical impairments, including hearing loss or severe residual effects of cerebral palsy" [TR 88].  [TR 85-89].  Indeed, as to this issue, the June 2018 ALJ Decision specifically states:

> ***With that said, I find that the claimant has no other severe physical impairment, including hearing loss or severe residual effects of cerebral palsy***. In so finding, I recognize that the claimant and her family members reported that she was deaf in the right ear and had difficulty walking and standing due to leg stiffness and/or ankle pain, primarily in her right leg, such that she wore special shoes (Ex. 3E/1, 6; 4E/6, 7; 5E/9, 11; 6E/7; 7E/3; 11E/1, 7; 13E/1 6, 7; 23E/1; 19F/8).
>
> However, I give great weight to the opinions of Dr. Murphy and Dr. Brooks that neither of these impairments is severe because, after reviewing all of the objective evidence of record and hearing the claimant's testimony, Dr. Murphy noted that the claimant's hearing loss was only mild, that she wore hearing aids, and that the claimant did not exhibit deficits indicative of other residual effects of cerebral palsy during her physical examinations. Similarly, Dr. Brooks noted that the claimant was able to adequately answer questions and that physical examinations showed no manifestation of cerebral palsy.
>
> These opinions are consistent with the evidence of record discussed above, including findings of a normal gait, normal neurological findings, and normal musculoskeletal findings. Also, I note that the claimant did not present for treatment of physical problems apart from presenting for the abscess that resolved three days later, and she denied symptoms. Notably, Dr. Anderson observed that, although the claimant told him during his psychological examination of her that she could not sit for more than 20 minutes, she sat for over three hours during the examination without exhibiting signs of distress (Ex. 17F/2). Likewise, while she testified that

---

[5] "Procedural perfection is not required unless it affects the substantial rights of a party," and as such, the analysis must go an additional step to determine if there was substantial evidence to support an ALJ's finding that a particular impairment is not severe. *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).

> she could only sit for 30 minutes, she was able to sit through both hearings without sign of distress, and she said that she could stand for two hours at a time.
>
> As for the claimant's hearing loss, I recognize that the claimant used to wear hearing aids (Ex. 3E/1; 4E/6, 7; 5E/11; 6E/7; 7E/3; 11E/1, 7; 13E/1, 6, 7; 23E/1; 19F/8). I further recognize that her audiologist has recommended these but that Medicaid has recently denied them (Ex. 28E/1). However, the claimant was still able to adequately answer questions and did not appear to have difficulty understanding during the most recent administrative hearing even without hearing aids. In addition, the notes from the claimant's job coach discussed below did not reference any problems with the claimant hearing at work (Ex. 36E). Moreover, the audiometry testing discussed above showed hearing loss, but it showed that the claimant's hearing was within normal except for a few frequencies and that she had only mild speech discrimination deficits.
>
> Finally, Ms. Greene reported in February 2013 that the claimant did not have a physical disability (Ex. 4B/8).
>
> Therefore, neither the claimant's hearing loss nor her cerebral palsy has more than minimally affected her ability to engaged in basic work activities. As such, these are non-severe impairments (20 CFR 416.920(c) and 416.921; SSR 85-28).

[TR 88-89 (emphasis added)].

A review of the record reflects that in finding Young's alleged hearing loss and other cerebral palsy related impairments nonsevere during the relevant period of time the ALJ considered her subjective complaints, as well as the totality of the objective medical evidence. The record reflects that in November and December 2012, Young, Greene, and Young's grandmother Debbie Beaver indicated on Disability and Function Reports that Young's cerebral palsy affected the right side of her body and caused her hearing and walking difficulties [TR 316, 319, 324, 332-33, 343, 345, 356, 382, 388, 393]. The ALJ found later reports by Greene that Young did not have a physical disability [TR 123] coupled with the objective medical evidence contradicted these allegations. While not an exhaustive recitation of the record, as to her cerebral palsy related impairments, a consultative examination report in January 2012 showed that Young had a "symmetric, steady gait," that she "was able to squat and rise from [the] position with ease," and

other than her visual impairments her physical examination findings were benign [TR 543]. In March 2012, a case assessment performed by Dr. Yvonne Post found that Young had a "steady symmetric gait" [TR 580]. Another case assessment performed by Dr. Kelvin Samaratunga in December 2012, found that Young could squat and rise without difficulty, she was able to walk on her heels and toes with ease, and she was able to walk about two miles before needing to rest [TR 601]. In May 2013, Dr. Purvi Patel reported on examination that Young "ambulated normally with no overt signs of motor anomalies" [TR 745]. In October 2013, Young reported no cerebral palsy related walking problems and Dr. Alejandra Nieto "Dr. Nieto" found that Young exhibited a normal gait and stance upon examination [TR 877]. Again, in February 2014, Young reported no issues with her walking and Dr. Nieto found that she exhibited no physical motor disturbances [TR 884]. As to her hearing loss, in November 2016, a hearing examination revealed that Young had a "moderate flat" sensorineural hearing loss [TR 918]. However, in January 2018, another hearing evaluation revealed Young's "hearing [was] within normal limits, except at a few frequencies" [TR 931]. And as already noted, the ALJ considered the medical testimony presented at each of the Hearings related to Young's case. At Young's first administrative hearing in November 2013, Dr. Durado Brooks ("Dr. Brooks") reviewed the record and testified that other than her visual impairment, "there are no other physical limitations reported by the available record" [TR 1035]. Dr. Brooks made observations to Young's alleged hearing difficulties. He noted that the level of hearing challenges is not documented – but does not appear to be severe, and importantly, he found that at the time of the hearing the only documented information of a hearing impairment was that she wore a hearing aid in 2010 [TR 1033-34]. Based on this information, Dr. Brooks opined that Young "seemed to understand and respond appropriately to questions without any evidence of hearing dysfunction" [TR 1034]. At Young's administrative

REPORT AND RECOMMENDATION – Page 11

hearing in June 2015, Dr. Charles Murphy ("Dr. Murphy") reviewed the record and testified that Young had only "minor hearing loss" and that her physical examinations revealed "no evidence" of cerebral palsy [984-985]. He further opined that the medical record evidence showed that she had visual impairments, but—coming to the same conclusion as Dr. Brooks—that was Young's "only deficit" [TR 985]. In buttressing this conclusion, he noted that physical examinations revealed that her gait and motor strength were normal [TR 985].

Young failed to satisfy her step two burden; the ALJ properly found that Young's alleged hearing and other cerebral palsy related impairments were nonsevere. *See* 20 C.F.R. § 416.912(a); *see Saenz v. Berryhill*, No. 1:18-cv-00156, 2019 WL 4061551, at *5 (S.D. Tex. July 15, 2019) (affirming ALJ's nonseverity finding where ALJ "extensively analyz[ed] the medical evidence"), *report and recommendation adopted*, No. 1:18-cv-00156, 2019 WL 4055001 (S.D. Tex. Aug. 28, 2019); *see also Scott v. Comm'r*, No. 17-48, 2018 WL 1321037, at *6-7 (M.D. La. Mar. 14, 2018) (affirming ALJ decision where the ALJ reviewed the objective medical evidence and found plaintiff's impairments nonsevere and "overall, the objective medical records do not support a conclusion contrary to that of the ALJ.").[6]

---

[6] Notwithstanding, any step two error would be harmless here because the ALJ proceeded beyond step two in the sequential analysis. *See Parker v. Kijakazi*, No. 4:21-cv-219, 2022 WL 4493739, at *4 (E.D. Tex. Aug. 9, 2022) ("The Court need not determine whether the ALJ erred in his step two analysis because the ALJ found at least one severe impairment and proceeded to later steps in the sequential evaluation process."), *report and recommendation adopted*, No. 4:21-cv-219, 2022 WL 4490129 (E.D. Tex. Sept. 26, 2022). And in the RFC analysis, the ALJ makes clear that in making his RFC finding he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" and found that "the claimants medically determinable impairments could reasonably be expected to cause the alleged symptoms" [TR 93-94]. *See Jones v. Kijakazi*, No. 3:20-cv-00608, 2022 WL 5082277, at *4 (S.D. Miss. Aug. 8, 2022) (finding that Plaintiff failed to meet his burden that additional limitations in the RFC were warranted where "he fail[ed] to explain what additional or alternative limitations should have been included."), report and recommendation adopted, No. 3:20-cv-00608, 2022 WL 4079264 (S.D. Miss. Sept. 6, 2022).

*Substantial Evidence Supports the RFC Assessment*

Young's second point of error argues that the ALJ erred in relying on the VE's testimony and finding that she could work because the jobs the ALJ found she could perform did not "did not take into consideration" who would drive her to and from such employment, and that she cannot live on her own [Dkt. 15]. In response, the Commissioner argues that the ALJ properly formulated the RFC which is supported by substantial evidence [Dkt. 16, at 9].

Addressing the Commissioner's contention first, the RFC is an assessment based on all the relevant evidence of a claimant's maximum ability to do work on a sustained basis in an ordinary work setting despite his or her impairments.[7] 20 C.F.R. § 404.1545(a); *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). The RFC is the most a claimant is able to do despite her physical limitations. The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985). The ALJ is not required to incorporate limitations in the RFC the ALJ finds unsupported by the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991); *Kozlowski v. Colvin*, No. 4:13-cv-020-A, 2014 WL 948653, at *7 (N.D. Tex. Mar. 11, 2014). By way of reminder, the ALJ made the following RFC determination, here,

> [T]he claimant has had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: She cannot perform tasks requiring a full visual field or depth perception and cannot work in proximity to hazards such as unprotected heights, moving machinery parts, and open flames. Also, she cannot operate a vehicle or operate heavy equipment. From a mental standpoint, she can understand, remember, and carry out only simple tasks involving only simple work-related decisions with few, if any, workplace changes.

---

[7] When considering a claimant's RFC, the Commissioner assesses an applicant's physical, mental, and sensory abilities, evaluates how those abilities apply to that applicant's work-related functioning, and finally considers whether that applicant can sustain work-related activities in a work setting on a regular and continuing basis. *See* 20 C.F.R. § 404.1545(b)-(d); S.S.R. 96-8p, 1996 WL 374184 at *3-4.

REPORT AND RECOMMENDATION – Page 13

[TR 93]. In reaching this RFC, the ALJ expressly opined that the medical evidence did not support the limitations Young alleged, including any gait disturbance or hearing loss [TR 93].

The objective evidence reviewed by the ALJ reflects that Young does not suffer from a gait disturbance [TR 85-86, 542-43, 743, 745, 877, 880, 883]. *Scott v. Comm'r*, No. 17-48, 2018 WL 1321037, at *5 (M.D. La. Mar. 14, 2018) (medical evidence finding that gait was normal or negative for a gait problem supported the ALJ's RFC determination). During Young's administrative hearings in 2013 and 2014, Dr. Brooks and Dr. Murphy both said that Young's only physical difficulty was her right eye blindness, and that she suffered no gait disturbance because of her cerebral palsy [TR 88, 984-985, 1032-1034]. Young's daily activities also contradict her allegations that her physical difficulties related to her cerebral palsy preclude her from working [TR 320, 323, 326, 381, 466-527]. *Corpany v. Colvin*, No. 4:12-cv-878, 2014 WL 1255316, at *6 (N.D. Tex. Mar. 26, 2014) (citing *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991)) ("An ALJ may discredit subjective complaints in light of contradictory medical reports or daily activities."); *Gonzales v. Kijakazi*, SA-20-cv-00498, 2021 WL 3783242, at *6 (W.D. Tex. Aug. 25, 2021) ("Where there are inconsistencies between the claimant's alleged limitations and the evidence as a whole, an ALJ may reasonably discredit the testimony."). Specifically, Young's job coach did not report that she faced difficulties walking or moving around while at work [TR 467-527]. The medical evidence similarly supported the lack of need for a hearing limitation in the RFC because Young's hearing examinations in 2016 and 2018 showed she suffered only mild difficulties with her hearing [TR 85-89, 918, 931]. *Taylor v. Colvin*, No. H-15-718, 2016 WL 3443655, at *7 (S.D. Tex. June 3, 2016) (finding the RFC was supported by substantial evidence where the ALJ did not incorporate any restrictions on hearing because "Plaintiff offered no evidence … that his mild-to-moderate hearing loss *caused* a functional limitation on his ability to

work.") (emphasis added), *report and recommendation adopted*, No. H-15-718, 2016 WL 3455384 (S.D. Tex. June 20, 2016). Young also reported she enjoyed activities inconsistent with her alleged audio and visual disability including listening to music, watching television, reading, writing, and sewing [TR 87-88, 320, 323, 326, 381]. The ALJ properly determined that the medical evidence did not support the limitations to the extent Young alleged and properly formulated the RFC for a range of work supported by evidence [TR 93]. *Martinez v. Saul*, No. SA-20-CV-00869-ESC, 2021 WL 2253912, at *5-6 (W.D. Tex. June 3, 2021) (finding substantial evidence for the RFC where the ALJ considered all objective medical evidence in the record).

Turning to Young's concerns about the jobs selected by the ALJ in step five [Dkt. 15], the Court finds on the record before it that these grounds do not warrant remand. Young makes the argument that the ALJ, in relying on the VE's testimony, did not factor in her inability to live on her own and that she is not able to drive herself. To begin, Young does not point the Court to any evidence that Young's inability to live on her own precludes her from working or that she cannot transport herself to employment through public transportation or other means. *Escatel v. Colvin*, No. 3:14-cv-02571, 2015 WL 2379113, *7-8 (N.D. Tex. May 18, 2015) ("while Plaintiff may be limited in her ability to drive due to the medications she takes, she does not address the possibility that she could use an alternative means of transportation, such as having someone else drive her or using public transportation"). Plaintiff has a well-documented part-time work history at Goodwill. *See also Krug v. Saul*, 466 F. Supp. 3d 942, 956 (E.D. Wis. Mar. 20, 2020) (finding that Plaintiff's "immobility" did not need to be factored into the analysis where, among other things, she had a well-documented work history). And at Hearing, Young's mother testified that Young loves her job at Goodwill and is capable of working [TR 946].

REPORT AND RECOMMENDATION – Page 15

"Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which [claimants] are able to meet with [their] physical or mental abilities and vocational qualifications." 20 C.F.R. § 404.1566(b). The Fifth Circuit has not set a specific number of jobs that it deems to be a significant number. *Michaud v. U.S. Comm'r, SSA*, NO. 6:19-cv-01580, 2021 WL 790190, at *5 (W.D. La. Jan. 19, 2021) (*quoting Thomas v. Astrue*, No. 1:10-CV-472-HSO-JMR, 2012 WL 3544837, *6 (S.D. Miss. July 31, 2012), *report and recommendation adopted*, 2012 WL 3544846 (S.D. Miss Aug. 16, 2012)), *report and recommendation adopted*, NO. 6:19-cv-01580, 2021 WL 786730 (W.D. La. Feb. 26, 2021). However, the Sixth Circuit has suggested that,

> [a] judge should consider many criteria in determining whether work exists in significant numbers, some of which might include: the level of claimant's disability; the reliability of the [VE]'s testimony; the reliability of the claimant's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on. The decision should ultimately be left to the trial judge's common sense in weighing the statutory language as applied to a particular claimant's factual situation.

*Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988) (finding 1,350-1,800 jobs in a nine-county area in Ohio to be significant); *see e.g., Adrienne W. v. Berryhill*, N. 3:17-CV-1218-N (BT), 2018 WL 4403467, at *3 (recognizing Sixth Circuit test) (N.D. Tex. Aug. 24, 2018), *report and recommendation adopted*, No. 3:17-CV-1218-N (BT), 2018 WL 4386780 (N.D. Tex. Sept. 14, 2018). After considering the evidence, and in reliance on the VE testimony, the ALJ found proof of more than 11,728 jobs in the Texas economy Young could perform despite her reduced capacity. The Court finds this combination of collator, sorter, and bus attendant allows for a substantial number of jobs in the national economy. *See Dugan v. Comm'r*, No. 1:20-cv-00344, 2021 WL 5231731, at *3-4 (N.D. Ind. Nov. 9, 2021) (finding that the jobs of collator, sorter and routing

clerk accounts for a significant number of jobs in the national economy); *Escatel v. Colvin*, 2015 WL 2379113, *8.

## CONCLUSION AND RECOMMENDATION

Accordingly, the Court recommends any claims asserted by Greene, by herself and/or on behalf of Young, against the Commissioner be **DISMISSED WITHOUT PREJUDICE** due to lack of standing; to the extent Young asserts any claims on her own behalf the Court recommends the Commissioner's decision be **AFFIRMED**.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 3rd day of January, 2023.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE